1

2

3                                              FILED IN THE
                                          U.S. DISTRICT COURT
                                     EASTERN DISTRICT OF WASHINGTON

                                          Jun 10, 2020
4
                                          SEAN F. McAVOY, CLERK

5               UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7   SCOTT S.,[1]                    | No. 1:19-cv-03255-MKD
                    Plaintiff,      |
8                                   | ORDER DENYING PLAINTIFF'S
        vs.                         | MOTION FOR SUMMARY
9                                   | JUDGMENT AND GRANTING
    ANDREW M. SAUL,                 | DEFENDANT'S MOTION FOR
10  COMMISSIONER OF SOCIAL          | SUMMARY JUDGMENT
    SECURITY,                       |
11                  Defendant.      | ECF Nos. 14, 15

12      Before the Court are the parties' cross-motions for summary judgment.  ECF

13  Nos. 14, 15.  The parties consented to proceed before a magistrate judge.  ECF No.

14  7.  The Court, having reviewed the administrative record and the parties' briefing,

15

16

17  _____

18  [1] To protect the privacy of plaintiffs in social security cases, the undersigned

19  identifies them by only their first names and the initial of their last names.  *See*

20  LCivR 5.2(c).

    ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

1  supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

2  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

3  ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless

4  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

5  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

6  decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

7  *Sanders*, 556 U.S. 396, 409-10 (2009).

8  ## FIVE-STEP EVALUATION PROCESS

9  A claimant must satisfy two conditions to be considered "disabled" within

10  the meaning of the Social Security Act.  First, the claimant must be "unable to

11  engage in any substantial gainful activity by reason of any medically determinable

12  physical or mental impairment which can be expected to result in death or which

13  has lasted or can be expected to last for a continuous period of not less than twelve

14  months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

15  "of such severity that he is not only unable to do his previous work[,] but cannot,

16  considering his age, education, and work experience, engage in any other kind of

17  substantial gainful work which exists in the national economy."  42 U.S.C. §

18  423(d)(2)(A).

19  The Commissioner has established a five-step sequential analysis to

20  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

ORDER - 3

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education, and

past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to

other work, the analysis concludes with a finding that the claimant is disabled and

is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

ORDER - 5

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 24, 2015, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of August 19, 2014.[2]  Tr. 249-55.  The application was denied initially and on reconsideration.  Tr. 165-71, 173-78. Plaintiff appeared before an administrative law judge (ALJ) on July 9, 2018.  Tr.

---

[2] Plaintiff applied for Title II disability insurance benefits on January 9, 2013 and for Title XVI supplemental security income benefits on January 25, 2013, alleging a disability onset date of November 22, 2012.  Tr. 134.  The applications were denied initially and on reconsideration.  *Id*.  Plaintiff appeared at a hearing before an ALJ on July 14, 2014.  *Id*.  On August 18, 2014, the ALJ denied Plaintiff's claims.  *Id*.  On October 30, 2015, the Appeals Council denied review.  Tr. 135. On January 25, 2017, this Court denied Plaintiff's motion for summary judgment. Tr. 128-54.

ORDER - 6

36-74.  At the administrative hearing, Plaintiff amended his alleged onset date to November 1, 2016.  Tr. 15, 42.  On August 30, 2018, the ALJ denied Plaintiff's claim.  Tr. 12-32.

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 19, 2014, his alleged disability onset date.[3]  Tr. 18.  At step two, the ALJ found that Plaintiff had the following severe impairments: obstructive sleep apnea, depressive disorder, migraines/headaches, status post left knee replacement, obesity, deep vein thrombosis, osteoarthritis of right upper extremity, arthritis right knee, and vision disorder.  Tr. 18.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  Tr. 19.  The ALJ then concluded that Plaintiff had the RFC to perform sedentary work with the following limitations:

> [Plaintiff is] capable of engaging in unskilled, repetitive, routine tasks
> in two hour increments; occasional stooping and crouching; no
> squatting, crawling, kneeling, or climbing ramps, stairs, ropes,
> ladders, scaffolds; off task at work 10% of the time but still meeting
> the minimum production requirements of the job; absent from work
> 1.5 days a month; frequent handling and fingering; no balancing,
> working at heights, driving, ambulating on uneven surfaces, or

_____

[3] At step one, the ALJ referred to Plaintiff's original disability onset date.

ORDER - 7

working in proximity to hazardous conditions; and no working on computers.

Tr. 21.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  Tr. 25.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as touch up screener, table worker, and order clerk. Tr. 26.  Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the amended alleged onset date of November 1, 2016, through the date last insured of March 31, 2018.  Tr. 26.

On August 29, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly developed the record;[4]

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

3.  Whether the ALJ properly evaluated the medical opinion evidence;

4.  Whether the ALJ properly evaluated lay witness evidence; and

5.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 14 at 7, 11-12.

## DISCUSSION

**A.    Record Development**

Plaintiff argues that the ALJ failed to fully develop the record.  ECF No. 14 at 11-12.  A claimant has a duty to submit or inform the ALJ about any written evidence no later than five business days before the hearing.  20 § C.F.R. 404.935(a).  If the claimant misses the deadline, the ALJ must accept the untimely evidence if the ALJ has not yet issued a decision and one of the following exceptions applies:

---

[4] Plaintiff combined the arguments regarding the evaluation of medical opinion evidence and the ALJ's development of the record.  For clarity, the Court addresses the arguments separately.

ORDER - 9

1)  A Social Security Administration (Administration) action misled the claimant;

2)  The claimant's physical, mental, educational, or linguistic limitation(s) prevented the claimant from informing the Administration about or submitting the evidence earlier; or

3)  Some other unusual, unexpected, or unavoidable circumstances beyond the claimant's control prevented them from informing the Administration about or submitting the evidence earlier.  Examples include, but are not limited to, serious illness, death or serious illness in immediate family, or the claimant actively and diligently sought evidence from a source and the evidence was not received or was received less than five business days prior to the hearing.

20 § C.F.R. 404.935(b).

Social Security Ruling (SSR) 17-4p further explains that representatives have a duty to act with reasonable promptness to help obtain information and evidence.  SSR 17-4p, 2017 WL 4736894, at *2.  Representatives are expected to submit or inform the Administration about evidence as soon as they obtain or become aware of the evidence.  *Id*.  Representatives are expected to submit the evidence unless they show that, despite good faith efforts, the representative could not obtain the evidence.  *Id*., at *1-2.

Further, the ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel.  *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996).  The ALJ will assist in

ORDER - 10

1   developing the record and may request existing evidence from a medical

2   source/entity if the Plaintiff informed the ALJ of the evidence no later than five

3   business days before the hearing, or if the claimant informed the ALJ of the

4   evidence after the deadline but one of the circumstances listed in 20 C.F.R. §

5   404.935(b) applies.  SSR 17-4p, 2017 WL 4736894, at *5.  If the ALJ finds

6   Plaintiff met the requirements of 20 C.F.R. § 404.935 and the Plaintiff needs

7   assistance obtaining the records, the ALJ will make an initial request for the

8   evidence and will send one follow-up 10 to 20 calendar days after the initial

9   request, if the evidence has not been received.  *Id.*  "Ambiguous evidence, or the

10  ALJ's own finding that the record is inadequate to allow for proper evaluation of

11  the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  *See*

12  *Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th

13  Cir. 1996)).

14      *1.  Additional Written Evidence*

15          Plaintiff contends that the ALJ erred by failing to admit additional written

16  evidence into the record.  ECF No. 14 at 11-12.  At the administrative hearing, the

17  ALJ noted that a document was submitted less than five days prior to the hearing.

18  Tr. 39.  Plaintiff's counsel told the ALJ that they "did not know that [the medical

19  provider] was going to be able to fill it out and that's why we never let you know

20  about it until the doctor actually lead to it last Thursday…"  Tr. 39.  The ALJ

ORDER - 11

declined to admit the written evidence, finding that Plaintiff was represented and

there was no indication that any action by the Social Security Administration

misled Plaintiff or his counsel, there was no indication that Plaintiff's physical,

mental, educational, or linguistic limitations prevented him or his counsel from

informing the ALJ about or submitting the evidence earlier, or that any unusual,

unexpected, or unavoidable circumstance beyond their control prevented them

from informing the ALJ about or submitting the evidence earlier. Tr. 15-16; *see* 20

§ C.F.R. 404.935(b). Plaintiff's explanation at the hearing as to why the ALJ was

not told about the additional evidence five days before the hearing was that

Plaintiff's counsel did not know whether the medical provider was going to be able

to fill out the document. Tr. 39. Plaintiff now argues that the evidence did not

exist five days before the hearing, but he has not offered an explanation as to why

the medical opinion could not be obtained from the doctor at an earlier date. The

ALJ's finding that Plaintiff failed to meet the requirements of 20 CFR 404.935(b)

is supported by substantial evidence.

 2. *Medical Expert Testimony*

 Plaintiff contends that the ALJ failed in his duty to fully and fairly develop

the record by declining to obtain medical expert testimony from an

ophthalmologist upon Plaintiff's attorney's request to determine the extent of his

vision problems. ECF No. 14 at 11-12. However, Plaintiff's attorney's mere

ORDER - 12

request for a medical expert does not trigger the ALJ's duty to develop the record. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered *only when* there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.") (emphasis added). Plaintiff fails to identify any ambiguity in the record to trigger the ALJ's duty to develop the record related to Plaintiff's vision impairment. ECF No. 14 at 11-12. Rather, the ALJ noted that Plaintiff had a history of vision problems, Tr. 44, 54-58, 772, but several examinations indicated the absence of such problems, including blurred vision and double vision, Tr. 812, 960, 970, 979. Tr. 22. The ALJ observed that vision problems were not listed among Plaintiff's 11 chief complaints during his consultative examination. Tr. 22 (citing Tr. 416). Further, the ALJ highlighted that although Plaintiff wore corrective lenses, the medical records did not contain an indication of significant deficits and Plaintiff was able to see well enough to drive. Tr. 22 (citing Tr. 44, 315). Moreover, Janessa Hartman, OD, a developmental optometrist, examined Plaintiff and opined that because of Plaintiff's poor eye tracking, depth perception, and binocular ability, there was a "mild safety risk of [Plaintiff] making poor spatial judgments, becoming injured when playing sports, having difficulty reading road/warning signs quickly and efficiently, and judging distances poorly when driving." Tr. 574. The ALJ noted that the record contained evidence that Plaintiff was able to drive.

ORDER - 13

Tr. 21-22, 43-44, 315.  The record also contained evidence that Plaintiff was able to read and spend time on the computer.  Tr. 308, 566.  Based on this record, the ALJ formulated an RFC that limited Plaintiff to work that involved no climbing ramps, stairs, ropes, ladders, or scaffolds, no balancing, no working at heights, no driving, no ambulating on uneven surfaces, no working in proximity to hazardous conditions, and no working on computers.  Tr. 21.  Accordingly, the record was not ambiguous as to the extent of Plaintiff's vision problems.  The ALJ had no duty to develop the record on this issue.

## B.  Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims.  ECF No. 14 at 12-16.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  Social Security Ruling (SSR) 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

ORDER - 14

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other

ORDER - 15

1   factors concerning an individual's functional limitations and restrictions due to

2   pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

3   404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

4   individual's record," to "determine how symptoms limit ability to perform work-

5   related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

6        The ALJ found that Plaintiff's medically determinable impairments could

7   reasonably be expected to cause the alleged symptoms, but that Plaintiff's

8   statements concerning the intensity, persistence, and limiting effects of his

9   symptoms were not entirely consistent with the evidence.  Tr. 22.

10       *1. Inconsistent with Objective Medical Evidence*

11       The ALJ found that Plaintiff's symptom complaints were inconsistent with

12   the objective medical evidence.  Tr. 22-23.  An ALJ may not discredit a claimant's

13   symptom testimony and deny benefits solely because the degree of the symptoms

14   alleged is not supported by the objective medical evidence.  *Rollins v. Massanari*,

15   261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th

16   Cir. 1991).  However, the objective medical evidence is a relevant factor, along

17   with the medical source's information about the claimant's pain or other

18   symptoms, in determining the severity of a claimant's symptoms and their

19   disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

20

ORDER - 16

1    Here, the ALJ discussed Plaintiff's alleged physical and mental symptoms

2    and conditions that caused him to be unable to work, such as his eyes crossing and

3    an inability to read if he watches a computer screen, an inability to stand or sit for

4    extended periods of time without lower extremity problems that require elevating

5    and icing his leg for 10 to 20 minutes, migraine headaches severe enough to

6    preclude activity, and depression.  Tr. 16, 22 (citing Tr. 54-60).  The ALJ noted

7    that Plaintiff alleged his impairments caused difficulties with seeing, standing,

8    bending, kneeling, using his hands, understanding, following instructions,

9    remembering, completing tasks, and concentration.  Tr. 22 (citing Tr. 317).

10    However, the ALJ found that Plaintiff's physical symptom complaints were

11    inconsistent with the objective medical evidence in the record.  Tr. 22-23; *see, e.g.,*

12    Tr. 395, 412, 416, 443, 447, 450, 488, 494, 585, 591-92, 595, 765, 769, 820

13    (Plaintiff routinely demonstrated no distress during medical appointments); Tr. 44,

14    54-58, 772, 812, 960, 970, 979 (although Plaintiff had a history of vision problems,

15    several examinations indicated the absence of such problems, including blurred

16    vision and double vision); Tr. 416 (February 7, 2016: at his consultative

17    examination, the examiner listed Plaintiff's 11 chief complaints and vision,

18    obesity, and deep vein thrombosis went unmentioned); Tr. 44, 315 (although

19    Plaintiff wore corrective lenses, the medical records contained no indication of

20    significant deficits and he was able to see well enough to drive).  Further, the ALJ

ORDER - 17

found that Plaintiff's treatment records reflected mostly normal musculoskeletal
and cardiovascular findings.  Tr. 22-23; *see, e.g.,* Tr. 395 (January 28, 2015: upon
examination Plaintiff had normal cardiovascular findings and no clubbing,
cyanosis, or edema in his extremities); Tr. 443 (March 23, 2016: physical
examination revealed normal cardiovascular findings and Plaintiff's extremities
were normal); Tr. 598-99 (December 21, 2016: upon examination Plaintiff had
normal cardiovascular findings; Plaintiff's lumbar spine showed central
lumbosacral tenderness, normal stability and strength, painful right straight leg
test; examination of his hips was normal; Plaintiff had a limp on his left side and
his medial joint was "exquisitely sensitive"); Tr. 488 (July 14, 2017: physical
examination revealed normal cardiovascular and musculoskeletal findings); Tr.
504 (August 17, 2015: examination showed a semi-rigid flexion deformity at the
DIPJ of Plaintiff's third toe noted right); Tr. 591 (September 7, 2017: physical
examination revealed normal cardiovascular and musculoskeletal findings); Tr.
585, 789-90 (February 21, 2018: Plaintiff's left knee replacement surgery appeared
to have been successful); Tr. 812-13 (March 3, 2018: Plaintiff was tachycardic;
Plaintiff had normal back and upper extremity findings, but he exhibited
tenderness in his left calf).

The ALJ also found that Plaintiff's mental health allegations were
inconsistent with the objective medical evidence in the record, as his treatment

ORDER - 18

1 records reflected mostly normal psychological and neurological findings with

2 occasional anxiety and confusion.  Tr. 23, *see, e.g.,* Tr. 395 (January 28, 2015:

3 upon examination Plaintiff was alert and oriented times three with no focal

4 deficits; his affect was normal, he had good eye contact, he was oriented to person,

5 place, and time, and he exhibited normal speech); Tr. 504 (August 17, 2015:

6 Plaintiff denied depression, disorientation, and memory loss); Tr. 436 (November

7 30, 2015: Plaintiff was alert and oriented, pleasant and cooperative, he had normal

8 speech and good eye contact, he reported an improved mood and his affect was

9 broad and responsive; Plaintiff's thought process was linear and goal directed, his

10 thought content was negative for delusions or hallucinations; he exhibited adequate

11 attention and fair insight and judgment); Tr. 419 (February 7, 2016: at Plaintiff's

12 consultative examination, his affect was somewhat discouraged and nervous, but

13 largely calm, pleasant, and at times happy; Plaintiff was fully oriented; he had

14 good persistence in attempting tasks and was able to recognize failure when he

15 made mistakes on digit span); Tr. 458, 488, 494 (February 12, 2015, November 18,

16 2016, July 14, 2017: Plaintiff was alert and oriented times three and his mood and

17 affect were normal); Tr. 601 (February 15, 2017: Plaintiff was fully oriented, had

18 appropriate mood and affect, and normal insight and judgment); Tr. 592 (June 27,

19 2017: Plaintiff had a normal affect, good eye contact, he was oriented to person,

20 place, and time, and he had normal speech); Tr. 942 (August 29, 2017: upon

ORDER - 19

1  mental status examination Plaintiff was cooperative and pleasant, he maintained

2  appropriate eye contact, he had normal speech, intact recent and remote memory,

3  and logical thought process; Plaintiff described his mood as "okay," and his affect

4  was congruent); Tr. 795 (September 25, 2017: Plaintiff had normal affect); Tr. 761,

5  765, 772 (June 13, 2017, July 18, 2017, July 27, 2017: upon mental status

6  examination Plaintiff was pleasant and cooperative, his recent and remote memory

7  was intact, he had sufficient attention span, concentration, language, and fund of

8  knowledge, and his speech was clear in tone, volume, and rate).

9          Plaintiff argues that the ALJ's findings are not supported by the record, and

10  instead, the objective findings are consistent with his allegations.  ECF No. 14 at

11  13-15; *see, e.g.,* Tr. 485, 618, 642, 650, 653, 675, 678, 696, 699, 724, 729 (Plaintiff

12  was frequently observed to have antalgic gait); Tr. 485, 585, 597, 601, 603, 618-

13  19, 665, 685, 696, 700, 729, 795, 813 (Plaintiff regularly had tenderness to

14  palpation); Tr. 618-19, 638 (Plaintiff had periods of swelling); Tr. 539, 548, 601,

15  603, 618, 644, 696 (Plaintiff was found to have decreased range of motion); Tr.

16  632, 634, 644, 650, 820 (Plaintiff had decreased range of motion after his surgery

17  in February 2018); Tr. 585, 636, 642, 644, 646, 650, 678, 696, 919, 925 (providers

18  noted that Plaintiff needed an assistive device to ambulate); Tr. 486 (imaging

19  showed moderately severe degenerative narrowing in Plaintiff's medial

20  compartment and moderate spurring in his patellofemoral joint); Tr. 613 (an MRI

ORDER - 20

of Plaintiff's left knee in March 2017 showed a horizontal tear in the body and

posterior horn of the medial meniscus, a longitudinal tear in the posterior horn of

the lateral meniscus, severe cartilage loss at the upper lateral femoral trochlea,

moderate to severe articular cartilage loss in the medial compartment with surface

fibrillation, mild distal quadriceps tendinosis, a ganglion cyst at the lateral

popliteus muscle, and joint fluid outlines in an intra-articular osteochondral body at

the anterior central line); Tr. 806 (imaging showed bilateral nonspecific

enthesophytes of the iliac bones and ischial tuberosities, and minimal spurring of

the bilateral acetabulum).  Where evidence is subject to more than one rational

interpretation, the ALJ's conclusion will be upheld.  *Burch v. Barnhart*, 400 F.3d

676, 679 (9th Cir. 2005).  The Court will only disturb the ALJ's findings if they are

not supported by substantial evidence.  *Hill*, 698 F.3d at 1158.  Here, the ALJ's

conclusion remains supported by substantial evidence despite the additional

evidence identified by Plaintiff.  The ALJ accounted for Plaintiff's physical

symptom complaints in the RFC by limiting him to sedentary work with additional

physical and mental limitations.  Tr. 21.  The ALJ's finding was a clear and

convincing reason, in conjunction with Plaintiff's improvement with treatment, *see*

*infra*, to discount Plaintiff's symptom complaints.

ORDER - 21

### 2. *Improvement with Treatment*

The ALJ found that Plaintiff's symptom testimony was inconsistent with the level of improvement he showed following his left knee replacement surgery. Tr. 23. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ concluded that Plaintiff's left knee replacement surgery appeared to have been successful. Tr. 23. On February 21, 2018, Plaintiff underwent surgery to replace his left knee. Tr. 585. Upon discharge, it was noted that Plaintiff was "[d]oing well." Tr. 790. On April 11, 2018, physical therapy treatment notes showed that although Plaintiff felt that he was behind on his total knee replacement progress, his improvement was actually "on target." Tr. 634. On this record, the ALJ reasonably determined that Plaintiff's allegations of debilitating knee pain were not consistent with the evidence of record due to Plaintiff's improvement after left knee replacement surgery. Tr. 23.

ORDER - 22

1    Plaintiff challenges the ALJ's conclusion by arguing that he had decreased

2   range of motion after his left knee replacement surgery.  ECF No. 14 at 13-14

3   (citing Tr. 632, 634, 644, 650, 820).  Plaintiff also asserts that on April 11, 2018,

4   seven weeks after his total knee replacement surgery, Plaintiff reported constant

5   dull and aching pain that was worsened by standing and it was noted that he had

6   minimal functionality despite the use of pain medications.  ECF No. 14 at 6 (citing

7   Tr. 614).  However, on that same date, Plaintiff's physical therapy treatment notes

8   reported that he was "on target" with his recovery.  Tr. 634.  The treatment notes

9   cited by Plaintiff from April 18, 2018, show that he although he "had a lot of

10  comorbidities affecting his TKA progress" such as medication issues, blood clots,

11  and migraine issues, Plaintiff's knee extension range of motion was improving, he

12  had reduced swelling, and his flexion range of motion had improved.  Tr. 632-33.

13  The treatment notes cited by Plaintiff from March 26, 2018, demonstrate that he

14  reported feeling "like he may have started to [turn] the corner," he was not using

15  his walker, he continued to have a standing tolerance of about 15 minutes where he

16  would get sweaty and nauseated secondary to the amount of pain, but he was

17  walking better than he had been walking.  Tr. 644.  Where the ALJ's interpretation

18  of the record is reasonable as it is here, it should not be second-guessed.  *Rollins*,

19  261 F.3d at 857.  Here, the ALJ reasonably concluded that the record showed

20  Plaintiff's left knee impairment improved after surgery in February 2018 and was

ORDER - 23

1   inconsistent with the level of impairment Plaintiff alleged.  Tr. 23.  Further, as

2   discussed *supra*, the ALJ accounted for Plaintiff's physical symptom complaints in

3   the RFC by limiting him to sedentary work with additional physical limitations,

4   including occasional stooping and crouching, no squatting, crawling, kneeling, or

5   climbing ramps, stairs, ropes, ladders, or scaffolds, and no balancing, working at

6   heights, driving, ambulating on uneven surfaces, or working in proximity to

7   hazardous conditions.  Tr. 21.  This was a clear and convincing reason to discredit

8   Plaintiff's subjective symptom complaints.

9         *3. Inconsistent with Activities*

10         The ALJ found that Plaintiff's activities were inconsistent with the level of

11  impairment Plaintiff alleged.  Tr. 22-24.  An ALJ may consider a claimant's

12  activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a

13  claimant can spend a substantial part of the day engaged in pursuits involving the

14  performance of exertional or nonexertional functions, the ALJ may find these

15  activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885

16  F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need

17  not vegetate in a dark room in order to be eligible for benefits, the ALJ may

18  discount a claimant's symptom claims when the claimant reports participation in

19  everyday activities indicating capacities that are transferable to a work setting" or

20

ORDER - 24

when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ indicated that Plaintiff's ability to assist his disabled wife, including occasionally bathing her and driving her to appointments, was inconsistent with his allegations of disabling physical and mental impairments.  Tr. 23.  In reaching this conclusion, the ALJ cited Plaintiff's hearing testimony.  *Id.* However, a review of Plaintiff's hearing testimony shows that he described having to bathe his wife "sometimes," and "not too often," as she was "usually pretty independent."  Tr. 46.  He also testified that their children or his wife's mother "will help out there quite a bit where I can't fill in" with "the feeding and stuff." *Id.*  Plaintiff testified that his wife's mother usually took her to appointments and although he had taken her to appointments in the past, the last time that he took her to an appointment himself was "probably last year."  *Id.*  He testified that he typically did not do any of the driving, but when he has had to drive his wife to appointments in the past, he would close his right eye and drive with his left eye. Tr. 47.  The ALJ also determined that Plaintiff's testimony about his ability to travel internationally without incident was inconsistent with his allegations of disabling mental impairments.  Tr. 23.  Plaintiff testified that three weeks before the hearing he traveled to Canada for a few days with his wife, his mother-in-law, and his son.  Tr. 49.  His mother-in-law drove, they took a bus and a ferry, and he

toured some gardens while being pushed in a wheelchair. *Id.*  The ALJ does not

explain how these occasional activities are inconsistent with his symptom claims.

*See Reddick v. Chater*, 157 F.3d 715, 721-22 (9th Cir. 1998) (claimant's ability to

engage in activities that were sporadic and punctuated with rest, including

housework, occasional weekend trips, and some exercise, did not support a finding

that the claimant could engage in regular work activities).  The ALJ's conclusion

that Plaintiff's activities were inconsistent with her alleged difficulty being around

many people is not supported by substantial evidence.

This error is harmless because the ALJ identified other specific, clear, and

convincing reasons to discount Plaintiff's symptom claims.  *See Carmickle v.*

*Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674

F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless

where the ALJ provided one or more invalid reasons for disbelieving a claimant's

testimony, but also provided valid reasons that were supported by the record.");

*Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)

(holding that any error the ALJ committed in asserting one impermissible reason

for claimant's lack of credibility did not negate the validity of the ALJ's ultimate

conclusion that the claimant's testimony was not credible).

ORDER - 26

1    **C.    Medical Opinion Evidence**

2        Plaintiff challenges the ALJ's evaluation of the medical opinion of Duane

3    Teerink, D.O.  ECF No. 14 at 9-12.

4        There are three types of physicians: "(1) those who treat the claimant

5    (treating physicians); (2) those who examine but do not treat the claimant

6    (examining physicians); and (3) those who neither examine nor treat the claimant

7    [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

8    *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

9    Generally, a treating physician's opinion carries more weight than an examining

10   physician's opinion, and an examining physician's opinion carries more weight

11   than a reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations

12   give more weight to opinions that are explained than to those that are not, and to

13   the opinions of specialists concerning matters relating to their specialty over that of

14   nonspecialists."  *Id.* (citations omitted).

15       If a treating or examining physician's opinion is uncontradicted, the ALJ

16   may reject it only by offering "clear and convincing reasons that are supported by

17   substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

18   "However, the ALJ need not accept the opinion of any physician, including a

19   treating physician, if that opinion is brief, conclusory, and inadequately supported

20   by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

ORDER - 27

(9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–31.  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

On January 9, 2018, Dr. Teerink completed a medical report for Plaintiff. Tr. 496-98.  Dr. Teerink diagnosed Plaintiff with osteoarthritis, major depression, migraines, chronic constipation, and chronic pain syndrome.  Tr. 496.  He noted that Plaintiff had to lie down three times per day for a half an hour each time.  Tr. 496.  Dr. Teerink opined that work on a regular and continuous basis could cause Plaintiff's condition to deteriorate.  Tr. 497.  He indicated that Plaintiff would miss more than four days of work each month.  Tr. 497.  Dr. Teerink concluded that Plaintiff was able to perform a range of sedentary work with additional limitations. Tr. 496-97.  He also opined that with physical therapy and behavioral modifications for pain management, Plaintiff's function could improve.  Tr. 497. He noted that Plaintiff's limitations had existed since at least 2012.  Tr. 498.

ORDER - 28

The ALJ gave Dr. Teerink's opinion some weight.[5]  Tr. 23.  Because Dr. Teerink's opinion was contradicted by the nonexamining opinions of Kathy Faas, SDM, Tr. 111-12, and Gordon Hale, M.D., Tr. 124-25, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Teerink's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ discounted Dr. Teerink's opinion because it appeared to rely heavily on Plaintiff's subjective pain complaints and limitations.  Tr. 23.  A physician's opinion may be rejected if it is based on a claimant's properly discounted complaints.  *Tonapetyan*, 242 F.3d at 1149; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 605.  However, when an opinion is not more heavily based on a patient's discounted self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).  As discussed *supra*, Plaintiff's symptom complaints were properly discounted.  The ALJ noted that Dr. Teerink's opinion that Plaintiff would miss more than four days of work each month was based on Plaintiff's

---

[5] The ALJ specified that he gave some weight to Dr. Teerink's opinion in concluding that Plaintiff was limited to sedentary work.  Tr. 23.

ORDER - 29

1   assertion that he would miss two to three days a week.  Tr. 23; *see* Tr. 497 (Dr.

2   Teerink wrote that Plaintiff would miss work two to three times per week "per

3   patient report").  The ALJ also noted that although Dr. Teerink indicated that

4   Plaintiff had these limitations since 2012, he identified Plaintiff as the source of the

5   statement.  Tr. 23; *see* Tr. 498 (Dr. Teerink wrote "2012 per patient").  Further the

6   ALJ observed that Dr. Teerink opined that work on a regular and continuous basis

7   would cause Plaintiff's condition to deteriorate, but Dr. Teerink also noted that his

8   conclusion was based on Plaintiff's asserted pain level that did not match the

9   medical imaging.  Tr. 23; *see* Tr. 497 (Dr. Teerink wrote "He has multifunctional

10  reasons for his chronic pain and his imaging does not match his level of pain,

11  however his perception is that he will worsen without the ability to rest frequently

12  throughout a day").  This was a specific and legitimate reason, supported by

13  substantial evidence, to discount Dr. Teerink's opinion.

14  **D.    Lay Opinion Evidence**

15       Plaintiff challenges the ALJ's rejection of the lay witness statements of his

16  wife, Ms. S.[6]  ECF No. 14 at 16-17.  An ALJ must consider the statement of lay

17

18  _____

19  [6] As the undersigned identifies plaintiffs in social security cases by only their first

20  names and the initial of their last names in an effort to protect their privacy, the

ORDER - 30

1  witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r, Soc.*

2  *Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness evidence cannot

3  establish the existence of medically determinable impairments, but lay witness

4  evidence is "competent evidence" as to "how an impairment affects [a claimant's]

5  ability to work."  *Id*.; 20 C.F.R. § 404.1513; *see also Dodrill v. Shalala*, 12 F.3d

6  915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to

7  observe a claimant's symptoms and daily activities are competent to testify as to

8  her condition.").  If a lay witness statement is rejected, the ALJ "'must give

9  reasons that are germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462,

10  1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

11      The ALJ considered a third-party function report dated January 19, 2016

12  from Ms. S. and assigned little weight to her statements.  Tr. 24, 304-11.  Ms. S.

13  reported that Plaintiff was clinically depressed, in constant pain, and was not able

14  to work.  Tr. 304.  Ms. S. also reported that Plaintiff's impairments affected his

15  ability to lift, stand, and sit and walk for more than 20 minutes at a time.  *Id*.  She

16  reported that Plaintiff would take her to medical appointments, pick up his

17  daughter after school, go to the store, and take their dog for haircuts.  Tr. 305, 307.

18  _____

19  undersigned will also identify Plaintiff's wife by the initial of her last name.  *See*

20  LCivR 5.2(c).

ORDER - 31

1    Ms. S. reported that Plaintiff had trouble sleeping because he was unable to turn

2    off negative thoughts and his arthritis made it difficult to find a comfortable sleep

3    position.  *Id*.  She indicated that Plaintiff would mow the lawn, pull weeds, and do

4    the dishes as they were simpler chores that did not have many steps.  Tr. 306.  She

5    reported that Plaintiff would drive unless he was tired.  Tr. 307.  She stated that

6    Plaintiff isolated himself and did not want to do as many family activities, and he

7    would go to Bible Study and Fellowship once a week.  Tr. 308.  She reported that

8    Plaintiff's impairments affected his ability to lift, bend, walk, sit, kneel, remember,

9    complete tasks, concentrate, understand, follow instructions, and use his hands.  Tr.

10   309.  The ALJ was required to give germane reasons to discredit this lay witness

11   opinion.  *Nguyen*, 100 F.3d at 1467.

12        First, the ALJ gave little weight to Ms. S.'s opinion because it was provided

13   by an individual without expertise in psychology or medicine.  Tr. 24.  Although

14   "medical diagnoses are beyond the competence of lay witnesses and therefore do

15   not constitute competent evidence," lay testimony "as to a claimant's symptoms or

16   how an impairment affects ability to work *is* competent evidence."  *Nguyen*, 100

17   F.3d at 1467 (emphasis in original); *see also Dodrill*, 12 F.3d at 918-19 ("[F]riends

18   and family members in a position to observe a claimant's symptoms and daily

19   activities are competent to testify as to her condition.").  This was not a germane

20   reason to discredit Ms. S.'s opinion.

ORDER - 32

Second, the ALJ gave little weight to Ms. S.'s opinion because, as Plaintiff's wife, she was not a disinterested party in this case. Tr. 24. "The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value." *Smolen*, 80 F.3d at 1289 (internal citations omitted). Ms. S.'s relationship to Plaintiff was not a germane reason to discredit her opinion.

Finally, the ALJ discounted Ms. S.'s opinion because it was not well supported by the medical evidence. Tr. 24; *see, e.g.,* Tr. 395 (January 28, 2015: Plaintiff was alert and oriented times three with no focal deficits; his affect was normal, he had good eye contact, he was oriented to person, place, and time, and he exhibited normal speech; upon examination Plaintiff had normal cardiovascular findings and no clubbing, cyanosis, or edema in his extremities); Tr. 443 (March 23, 2016: physical examination revealed normal cardiovascular findings and Plaintiff's extremities were normal); Tr. 488 (July 14, 2017: physical examination revealed normal cardiovascular and musculoskeletal findings; Plaintiff was alert and oriented times three and his mood and affect were normal); Tr. 504 (August 17, 2015: Plaintiff denied depression, disorientation, and memory loss; examination showed a semi-rigid flexion deformity at the DIPJ of the third toe noted right); T. 591 (September 7, 2017: physical examination revealed normal cardiovascular and musculoskeletal findings); Tr. 598-99 (December 21, 2016:

ORDER - 33

upon examination Plaintiff had normal cardiovascular findings; Plaintiff's lumbar

spine showed central lumbosacral tenderness, normal stability and strength, painful

right straight leg test; examination of his hip was normal; Plaintiff had a limp on

his left side and his medial joint was "exquisitely sensitive"); Tr. 812-13 (March 3,

2018: Plaintiff was tachycardic; Plaintiff had normal back and upper extremity

findings, but he exhibited tenderness in his left calf; examination indicated the

absence of blurred vision and double vision).  Inconsistency with the medical

evidence is a germane reason for rejecting lay witness testimony.  *See Bayliss*, 427

F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane

reasons include inconsistency with medical evidence, activities, and reports).  The

ALJ reasonably concluded that this evidence was inconsistent with the level of

impairment reported by Ms. S.  Tr. 24.  This was a germane reason to discredit her

opinion.  Although the ALJ erred by asserting improper reasons to reject Ms. S.'s

lay witness statements, these errors were harmless given the ALJ's reliance on

another germane reason that was supported by substantial evidence.  *See Molina*,

674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was

harmless where the ALJ provided one or more invalid reasons for disbelieving a

claimant's testimony, but also provided valid reasons that were supported by the

record."); *see also Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is

ORDER - 34

1  clear from the record that the . . . error was inconsequential to the ultimate

2  nondisability determination").

3  **E.    Step Five**

4  Plaintiff argues that the ALJ failed to meet his burden at step five.  ECF No.

5  14 at 17-19; ECF No. 16 at 5-7.  "[I]f a claimant establishes an inability to

6  continue [his] past work, the burden shifts to the Commissioner in step five to

7  show that the claimant can perform other substantial gainful work." *Burch*, 400

8  F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  At

9  step five, "the ALJ ... examines whether the claimant has the [RFC] ... to perform

10  any other substantial gainful activity in the national economy." *Id*.  "If the

11  claimant is able to do other work, then the Commissioner must establish that there

12  are a significant number of jobs in the national economy that claimant can do."

13  *Tackett*, 180 F.3d at 1099.  "There are two ways for the Commissioner to meet the

14  burden of showing that there is other work in 'significant numbers' in the national

15  economy that claimant can perform: (1) by the testimony of a [VE], or (2) by

16  reference to the Medical-Vocational Guidelines…" *Id*.  "If the Commissioner

17  meets this burden, the claimant is 'not disabled' and therefore not entitled to ...

18  benefits." *Id*. (citation and emphasis omitted).  "If the Commissioner cannot meet

19  this burden, then the claimant is 'disabled' and therefore entitled to ... benefits."

20  *Id*. (citation and emphasis omitted).

ORDER - 35

1    First, Plaintiff argues that the ALJ improperly relied upon an RFC and

2 hypothetical that failed to include all of Plaintiff's limitations.  ECF No. 14 at 18.

3 However, the ALJ's RFC need only include those limitations found credible and

4 supported by substantial evidence.  *Bayliss,* 427 F.3d at 1217 ("The hypothetical

5 that the ALJ posed to the VE contained all of the limitations that the ALJ found

6 credible and supported by substantial evidence in the record.").  The hypothetical

7 that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical

8 that is predicated on the ALJ's final RFC assessment, must account for all of the

9 limitations and restrictions of the particular claimant.  *Bray*, 554 F.3d at 1228.  "If

10 an ALJ's hypothetical does not reflect all of the claimant's limitations, then the

11 expert's testimony has no evidentiary value to support a finding that the claimant

12 can perform jobs in the national economy."  *Id*. (internal quotation marks omitted).

13 However, the ALJ "is free to accept or reject restrictions in a hypothetical question

14 that are not supported by substantial evidence."  *Greger v. Barnhart*, 464 F.3d 968,

15 973 (9th Cir. 2006).  A claimant fails to establish that a step five determination is

16 flawed by simply restating an argument that the ALJ improperly discounted certain

17 evidence, when the record demonstrates the evidence was properly rejected.

18 *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008).

19    Plaintiff asserts that the ALJ improperly rejected the opinion of Dr. Teerink,

20 and when the vocational expert was asked about some of these additional

ORDER - 36

1    limitations, he testified that Plaintiff would be unable to sustain competitive

2    employment.  ECF No. 14 at 18 (citing Tr. 70-72).  Plaintiff's argument is based

3    entirely on the assumption that the ALJ erred in discrediting Dr. Teerink's medical

4    opinion.  *See Stubbs-Danielson*, 539 F.3d at 1175 (challenge to ALJ's step five

5    findings was unavailing where it "simply restates [claimant's] argument that the

6    ALJ's RFC finding did not account for all her limitations").  For reasons discussed

7    throughout this decision, the ALJ's evaluation of Dr. Teerink's medical opinion

8    was legally sufficient and supported by substantial evidence.  Thus, the ALJ did

9    not err in assessing the RFC, and he posed a hypothetical to the vocational expert

10   that incorporated all of the limitations in the ALJ's RFC determination, to which

11   the vocational expert responded that jobs within the national economy existed that

12   Plaintiff could perform.  The ALJ properly relied upon this testimony to support

13   the step five determination.

14   Next, Plaintiff contends that the ALJ's identified jobs of touch up screener,

15   table worker, and order clerk are inconsistent with the assessed RFC.  ECF No. 14

16   at 19.  To ensure consistency, an ALJ must inquire about "an apparent unresolved

17   conflict between [the vocational expert's] evidence and the DOT."  SSR 00-4p,

18   2000 WL 1898704, at *2.  "For a difference between an expert's testimony and the

19   [DOT's] listings to be fairly characterized as a conflict, it must be obvious or

20   apparent."  *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).  Thus, failure to

1    resolve a conflict is only prejudicial if there is an actual conflict or if the vocational

2    expert's explanation is deficient.  *Massachi v. Astrue*, 486 F.3d 1149, 1154 n.19

3    (9th Cir. 2007).

4         Here, the ALJ found that Plaintiff was able to perform the jobs of touch up

5    screener, table worker, and order clerk.  Tr. 26.  Plaintiff argues that he is

6    precluded from performing these jobs because his RFC limits him to jobs that

7    allow him to be absent from work for one and a half days each month.  ECF No. 14

8    at 19 (citing Tr. 21).  At the administrative hearing, the vocational expert testified

9    that a hypothetical individual with Plaintiff's RFC, including the limitation to be

10   absent from work for one and a half days each month, would be able to perform the

11   work of a touch up screener, table worker, and order clerk.  Tr. 66-67.  The ALJ

12   then asked the vocational expert if he relied on anything other than the Dictionary

13   of Occupational Titles and its companion sources to provide his opinions, and

14   specifically inquired about the off-task time and the absenteeism in the RFC.  Tr.

15   67.  The vocational expert testified that his opinions about the off-task and

16   absenteeism factors were based on his experience as a rehabilitation counselor.  Tr.

17   67.  After adding to the ALJ's hypothetical, Plaintiff's counsel asked the

18   vocational expert how many days an individual would be able to miss work before

19   it became problematic in the workplace.  Tr. 70.  Consistent with his earlier

20   testimony, the vocational expert testified that he thought the maximum number of

ORDER - 38

days an employee could miss would "probably" be a day and a half of work.  Tr.

71.  Plaintiff's counsel then began asking questions about taking unscheduled

leave, including getting to work late, leaving early, or being dismissed.  Tr. 71.  In

response to that line of questioning, the vocational expert testified that if someone

"were absent on an unscheduled or an unexcused basis probably only about five of

those would be tolerated in a 12-month period."  Tr. 71.  When questioned again

by Plaintiff's counsel about his testimony that an individual could be absent from

work for a day and a half each month, the vocational expert testified, "Well, you

would say a day and a half would be pretty much as opposed to, you know,

anything older (sic) than that, like, two days would probably not be tolerated."  Tr.

71.  Based on this record, the ALJ was entitled to rely on the vocational expert's

testimony that Plaintiff was capable of performing the jobs of touch up screener,

table worker, and order clerk.  Therefore, the ALJ's step five determination that

Plaintiff was not disabled within the meaning of the Social Security Act was proper

and supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

ORDER - 39

1       1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2       2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is

3    **GRANTED**.

4       3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

5       The District Court Executive is directed to file this Order, provide copies to

6    counsel, and **CLOSE THE FILE**.

7       DATED June 10, 2020.

8                          _s/Mary K. Dimke_
                          MARY K. DIMKE
9              UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

ORDER - 40